## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **PHILLIP S. COGSWELL** and **PHIL COGSWELL ELECTRIC, INC.,** a Kansas corporation<br>Plaintiffs, | )<br>)<br>) |
| | ) |
| v. | ) **Civil Action No**. |
| | ) |
| **INTERNATIONAL PROFIT ASSOCIATES, INC.,** an Illinois corporation, **JOHN DOE COMPANIES A-C,** Illinois business entities, **JOHN R. BURGESS,** individually, **AL BACHMAN,** individually, **DAVID KREIHS TABONY,** individually, **WILL HEINING** individually and **RONALD COKER,** individually,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILED: MARCH 31, 2008
08CV1843          TG
JUDGE COAR
MAGISTRATE JUDGE MASON

## VERIFIED COMPLAINT

Plaintiffs PHILLIP S. COGSWELL and  PHIL COGSWELL ELECTRIC, INC., a

Kansas corporation, by and through their attorneys, Edward D. Gilhooly and Stephen G.

Kehoe, and for their Complaint against the Defendants, INTERNATIONAL PROFIT

ASSOCIATES, INC., JOHN DOE COMPANIES A – C, JOHN R. BURGESS, AL

BACHMAN, DAVID KREIHS TABONY, WILL HEINING  and RONALD COKER state

as follows:

## PREDICATE STATEMENT

1.      This Verified Complaint is brought by the Plaintiffs in connection with a

scheme by the Defendants to defraud and mislead small companies by infringement of the

copyright of others and by use of the Internet, interstate mail, wire and transportation; the

Defendants' misrepresentations and their false and misleading statements affecting

commerce, the Defendants' breach of contract with others as part of their scheme to

defraud, and other illegal conduct set forth below. The Plaintiff seeks relief which includes

actual, punitive and treble damages under federal and state law, as well as an accounting, imposition of constructive trusts with tracing, imposition and execution of equitable liens, divestiture, restrictions on future conduct, costs of suit, interest and attorneys' fees.

## JURISDICTION AND VENUE

2.    This action arises as a federal question under Title 18 of the United States Code, § § 1961 through 1968, the Racketeer Influenced and Corrupt Organizations Act, as amended ("RICO"), of the United States.

3.    This Court has jurisdiction of this action under 15 U.S.C. § 1121, 18 U.S.C. §§ 1964(a) and 1964(c), 28 U.S.C. §§. 1331, 1332 and 1338(a), and ancillary jurisdiction as to certain claims under 28 U.S.C. § 1338(b) and 1367(a).

4.    Venue is proper in the Northern District of Illinois. This Court has personal jurisdiction over the Defendants in accordance with 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b). Defendants are citizens of, residents of, are found within, have agents within, are doing business in and/or transact their affairs in this District, and the activities of Defendants which gave rise to Plaintiff's claims for relief occurred or originated in this District.

## PARTIES

5.    Plaintiff Phillip S. Cogswell ("Cogswell") is an individual residing at 14740 159th Street, Olathe, Kansas, who at all times pertinent hereto has been the sole shareholder of Plaintiff Phil Cogswell Electric, Inc.("PCEI"), and who agreed on behalf of PCEI to authorize the consulting services of the Defendants.

6.    Plaintiff Phil Cogswell Electric, Inc. ("PCEI"), is and has been a Kansas corporation with its principal place of business located in the home of its sole shareholder Phillip Cogswell, 14740 159th Street, Olathe, Kansas. PCEI engaged in the business of

installing electrical services for individuals and businesses for a period of approximately thirteen (13) years until November, 2004, at which time it ceased functioning as an operational entity and individual Plaintiff Cogswell was forced to close it due to financial difficulties caused by the Defendants.

7.    Defendant INTERNATIONAL PROFIT ASSOCIATES, INC. ("IPA") is an Illinois Corporation, which has its principal place of business at 1275 Barclay Boulevard, Buffalo Grove, Illinois. IPA provides business, advisory and/or consulting services to small businesses.

8.    Defendants JOHN DOE COMPANIES ("JOHN DOES") are, on information and belief, Illinois corporations with their principal places of business at 1275 Barclay Boulevard, Buffalo Grove, Illinois who provided aid and assistance to IPA in its business advisory or consulting service to small businesses and specifically made themselves available to the other Defendants in their dealings with the same.

9.    Defendant JOHN R. BURGESS ("BURGESS") is an individual having a place of business at 1275 Barclay Boulevard, Buffalo Grove, Illinois. Upon information and belief, Defendant BURGESS is co-founder and chairman of IPA, and owns and controls the business of that Defendant. Further upon information and belief, Defendant BURGESS conceived and executed the schemes alleged herein, with the other Defendants and other as yet unknown persons, and directed and controlled the other defendants in the implementation of said schemes, for profit.

10.    Defendant AL BACHMAN ("BACHMAN") is an individual having a place of business at 1275 Barclay Boulevard, Buffalo Grove, Illinois and, at all times relevant hereto, was an employee of IPA, with the title of Consulting Services Director.

11.    Defendant DAVID KREIHS TABONY ("TABONY") is an individual having a place of business at 1275 Barclay Boulevard, Buffalo Grove, Illinois and was, at all times relevant hereto, an employee of IPA with the title of Senior Project Manager.

12.    Defendant WILL HEINING, is an individual having a place of business at 1275 Barclay Boulevard, Buffalo Grove, Illinois and was, at all times relevant hereto, an employee of IPA with the title of Analyst.

13.    Defendant RONALD COKER ("COKER") is an individual having a place of business at 1275 Barclay Boulevard, Buffalo Grove, Illinois and, at all times relevant hereto, was an employee of IPA, with the title of Senior Business Consultant.

## FACTS COMMON TO ALL COUNTS

14.    On or about April 8, 2004 IPA and the JOHN DOES, represented by BACHMAN, TABONY, HEINING, COKER and/or other unknown persons, made an unsolicited sales pitch or presentation by telephone from Illinois to Kansas, to Plaintiffs at the office of PCEI. During the sales pitch and at other relevant times, Defendants among other things used their marks and names in commerce, including "IPA" and their company names, and also represented as facts, also in commerce, that IPA and the JOHN DOES;

(a)    Have the qualifications, expertise and experience to provide business consulting and advisory services meeting the "highest professional standards" to small business at reasonable prices;

(b)    That all Defendants' consultants and employees have a pertinent college bachelor's degree, most with masters and some with doctoral degrees, and all have a minimum of 10 years of direct mid-to-upper level business management experience;

(c)    That no competitor "enjoys our reputation for accuracy, knowledge and expertise"; to

(d)     That their small business clients would receive a "significant return on investment;"

(e)     That Defendants are "on the cutting edge of transactional consulting;"

(f)     That Defendants had successfully negotiated and consummated hundreds of "best deal transactions" for their clients;

(g)     That Defendants would provide quality consulting services in analyzing financial, operational and sales functions of each client, identify the client's strengths and deficiencies, provide a detailed business valuation, develop and implement solutions to business deficiencies to achieve the client's goals, and provide intermediary and negotiating services;

(h)     That all of the aforesaid client services, according to Defendants' representations, were to be provided at reasonable cost, as IPA was used to dealing successfully with small businesses in PCEI's local area and know they operate on tight budgets.

(i)     That additionally, true and reliable information about IPA, its related companies, consultants and employees could be found at IPA's websites; and

(j)     That. among other representations of fact, the Defendants and their businesses were approved, endorsed or sponsored by or were otherwise legitimately connected, affiliated or associated with, a number of well-known persons including former U.S. Presidents George Bush and Bill Clinton.

15.     Based upon the aforesaid representations and others made by the Defendants in its telephone sale pitch, including but not limited to the fact that Defendants were currently in Plaintiffs' area and could visit PCEI's office and perform a survey for only $300.00 to see if further work by the Defendants could help it improve PCEI's business,

Plaintiffs allowed the Defendants into the PCEI business premises for their survey. Thereafter, on or about April 8, 2004, Defendants, through WILL HEINING, performed that survey of the PCEI business on site for the cost of $300.00 and indicated that indeed the Defendants could aid PCEI in greatly improving its financial outlook if a further consultation were to occur.  Thereupon Plaintiffs agreed to meet with the Defendants to discuss the nature and extent of such a consultation.

16.     On or about the following day, BACHMAN, KREIHS TABONY and COKER visited the PCEI business in Olathe, Kansas. In discussions with Cogswell, these Defendants asserted that IPA had vast experience, including in the local area, and would perform an evaluation and written analysis that would immediately serve to change the course of PCEI's business in a positive manner and thereby Cogswell's personal life for the better by increasing the cash flow of PCEI from existing business and in the creation of new business.

17.     Though the Defendants knew from their initial evaluation that PCEI's business generated only $300,000.00 in annual gross revenues and that the company's cash flow was uneven at best, with one year's earnings eliminated by the prior year's losses, and knowing further that it was necessary for Cogswell to work on customer jobs himself as foreman full time every day for six (6) days a week to keep PCEI going financially, the Defendants developed and proposed a three (3) week consultation plan that would require PCEI to spend all of its available cash and credit to pay them on an immediate basis, leaving little or nothing left to maintain the business.

18.     Desperate for assistance in turning PCEI's business around and based upon the high pressure tactics and misrepresentations of the Defendants that they guaranteed to correct the financial ills of PCEI quickly if he allowed them to make their full analysis and

followed their recommendations, Cogswell agreed to allow Defendants to start the project. Thereafter, for the first week, KREIHS TABONY and COKER remained at PCEI's offices together in Cogswell's home and spent an inordinate amount of time performing a general, preliminary and largely useless analysis of and report on PCEI's business and structure for which they billed and required immediate payment of $17,850.87. On information and belief, in order to force PCEI to continue the consultation or lose any benefit at all from the first week's payment, Defendants entirely failed to determine PCEI's overhead, operating gross margin, break-even point billing or to propose any means for PCEI to raise immediate funds as promised despite its precarious financial position.

19. At the end of the first week, Defendant KREIHS TABONY left PCEI's offices and never contacted it again. Despite misgivings as to the cost and potential effectiveness of Defendant's continued consultation as Plaintiffs had yet to receive anything useful, Plaintiffs paid the $17,850.87 bill of the Defendants and agreed to allow COKER to remain on site based upon the representation by the Defendants that the only way that Plaintiffs would see the benefit of the Defendant's work would be to permit the project to be finished, especially since the cost would now be much less since only one consultant would remain on the premises.

20. At the end of the second week at PCEI, on or about April 25, 2004, COKER provided Plaintiffs with a proposed business strategy, the key to which was that PCEI would have to bid all new potential jobs at 55% above cost in order to increase profitability, along with a promised list of potential contractor customers who would be amenable to this new pricing structure that were supposedly drawn from Defendants' broad experience in the area.

21.     Unfortunately, however, this proposed business strategy ended up being completely worthless and certainly was known or should have been known to be worthless by the Defendants as PCEI was required by strong competition and difficult market conditions in its local area to bid its jobs at only 10-15% over its then existing costs. Moreover, the list of contractors who would supposedly be the subject of this new pricing structure was, on information and belief, simply obtained by the Defendants from either a local trade or telephone publication that they did not even cross check with PCEI's current customer base as some on the list had already been contacted by PCEI and the others it was later discovered were not receptive at all to higher bids for their jobs.  For this information, the Defendants billed and were paid $11,786.50 immediately from PCEI's very limited resources as Plaintiffs trusted in Defendants' purported expertise and was unable to personally assess and attempt to use the information COKER provided until after Plaintiffs completed current jobs that they had already developed without the assistance of the Defendants.

22.     Finally, Defendants continued the charade into the final week of their consultation for an additional charge of $8491.84 by providing Plaintiffs with a CD which supposedly was specifically formulated for it's use in implementing the Defendants' proposals and strategy.  However, on information and belief, these documents were simply derived from IPA's standard literature folder online, but which COKER modified to add the name of PCEI where appropriate to make it appear as if he and the other Defendants had done a great deal of work for the billing they were providing to PCEI.  These documents were designated as "Financial, Organizational, Progress Summary Reviews, Sales and Marketing and Electrical Agreement."

23.    In addition, the Electrical Agreement form among this group of boilerplate documents given to Plaintiffs had been wrongfully modified on or about April 24, 2004 by IPA and others from the copyrighted Electrical Agreement Form No. 115 of the Wilhelm Publishing Company of Columbia, Missouri, without authorization or prior knowledge of the copyright holder. That document, along with all of the other aforesaid documents were then passed off by COKER as Defendants' work product and Plaintiffs were told that they were authorized to use them.

24.   The total charge to Plaintiffs therefore for the three (3) weeks of Defendants' time and for these materials, which included the earlier provided "Enhancing Business Value," was in the amount of Thirty Eight Thousand Four Hundred Twenty-Nine Dollars and fifty cents  ($38,429.50), including thousands of dollars allotted to travel and lodging expenses.

25.   At all relevant times, therefore, the Defendants and each of them failed and refused to provide any implementation of the promised business strategy to Plaintiffs beyond boiler plate forms and the use of Wilhelm Publishing Company's copyrighted Electrical Agreement form that they had no authorization to use or to represent as their own.

26.   Defendants have engaged in each of the aforesaid acts and omissions willfully, intentionally and in bad faith.

## COUNT I

## FALSE AND MISLEADING DESCRIPTIONS AND REPRESENTATIONS OF FACT IN VIOLATION OF THE LANHAM ACT

27.    Plaintiffs reassert and reallege paragraphs 1 -26 of the Complaint hereof as paragraph 27 of this Count I as if fully set forth herein.

28.     Defendants acts and omissions are uses in commerce in connection with Defendants' goods and services, of words, terms, names, symbols and devices and are false or misleading descriptions or representations of fact, or false or misleading misrepresentations of fact, made to Plaintiffs, including by virtue of Defendants' uses of the mails, the Internet, wire and in transportation, in that among other things:

(a)     Defendants falsely stated that their personnel had the qualifications, expertise and experience to provide expert business consulting services and advisory services meeting the "highest professional standards" when in truth and fact they did not;

(b)     Defendants falsely stated that they would provide Plaintiffs with a legitimate expert cost accounting system and chart of accounts which would serve to aid Plaintiffs in making an immediate turn around in their financial woes when in truth and fact they did not;

(c)     Defendants falsely stated that they apply their consulting services on a customized basis for each client, when in truth and fact they do not, but rather devised a clever scheme which is comparable to a Ponzi scheme, to relieve Plaintiffs and other similarly situated small business owners of as much money as possible by billing them as much as possible in the first week of consultation without providing any useable results and requiring immediate payment thereon, which effectively serves to coerce those desperate business owners to pay for it and further work which would supposedly contain the promised benefits but which ultimately contains only simple, largely or entirely useless boilerplate proposals.

(d)     Defendants falsely stated that they would provide quality consulting services in analyzing financial, operational and sales functions of PCEI, identifying PCEI's strengths and deficiencies, provide a detailed, customized business valuation, develop and

10

implement solutions to PCEI's business deficiencies to achieve Plaintiffs' goals, when in truth and fact Defendants did not and could not do so;

(e)     Defendants falsely stated that the Electrical Agreement form, which Plaintiffs ultimately discovered was copyrighted by the Wilhelm Publishing Company, was prepared by the Defendants and that they had the authority to permit Plaintiffs to use it in its business when they were not so authorized;

(f)     Defendants falsely stated that it would not harm Plainitffs financially to pay their exorbitant fees and costs on an immediate ongoing basis out of its remaining cash and credit resources because once Plainitffs followed the recommendations of their consultation it would obtain immediate business and profits required to offset those costs and put the company on a sound financial footing as promised;

(g)     Defendants falsely misrepresented that former Presidents Bush and Clinton, and others whose endorsements would be influential, had endorsed, approved, sponsored, were connected, affiliated or associated with the Defendants, or had approved or endorsed Defendants' goods, services or businesses, when in truth and fact they had not;

(h)     In many other instances, Defendants made false or misleading descriptions or misrepresentations to Plaintiffs.

29.     Defendants' aforesaid acts and omissions in commerce are likely to cause and have actually caused confusion, mistake or deception as to the affiliations, connections or associations of Defendants, their goods, services, or businesses with other persons, or as to the origins, sponsorships or approvals of Defendants' goods, services or commercial activities, in violation of §43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A).

30.     Defendants' aforesaid acts and omissions in their commercial advertising and promotion in their commercial advertising and promotion in commerce have

misrepresented the nature, characteristics or qualities of the goods, services or commercial activities of the Defendants, in violation of §43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B).

31.    Defendants' aforesaid intentional, unauthorized use and representation of the copyrighted Electrical Agreement of the Wilhelm Publishing Company as their own infringed the exclusive right of that company in its copyrighted work product in violation of the civil provisions of 17 U.S.C.§501, et seq. and the criminal provisions against infringement of a copyright, 18 U.S.C. §2319, and trafficking in counterfeit goods or services, 18 U.S. C. §2320.  As a result thereof, Defendants deliberately and knowingly placed Plaintiffs in the position of receiving and using such unlawfully obtained copyrighted forms, all potentially in violation of the aforesaid statutory provisions.

32.    Defendants' aforesaid acts and omissions were willful, intentional or in bad faith.

33.    Plaintiffs actually have been and in the future will continue to be injured by Defendants, in their business and property, in an amount as yet to be determined, by reason of the Defendants' violations of the Lanham Act and the copyright laws, but which damages as are quantifiable exceed the sum of One Hundred Thousand Dollars ($100,000.00).

34.    This is an exceptional case within the meaning of §35(a) of the Lanham Act, 15 U.S.C. §117(a), as amended.

## COUNT II

## CIVIL RICO SUBSTANCE AND CONSPIRACY - SCHEME TO DEFRAUD BY USE OF MAILS., BY TRANSPORTATION AND BY WIRE (TELEPHONE. FAX AND INTERNET)

35.     Plaintiffs reassert and reallege paragraphs 1 -34 of the Complaint hereof as paragraph 35 of this Count I as if fully set forth herein.

36.     As part of their scheme to defraud Plaintiffs, the Defendants conspired among themselves, individually and collectively, to induce Plaintiffs and, on information and belief, others to pay them substantial sums for business information, including a copy of Wilhelm Publishing Company's copyrighted Electrical Agreement form. This scheme to defraud was entered into in the Northern District of Illinois and was implemented in commerce from Illinois and which includes the following conduct:

(a)     Upon information and belief, beginning on some date prior to April 8, 2004, a number of the Defendants, including Defendants IPA and BURGESS, began a scheme and conspiracy which was at various times joined or engaged in by Defendants JOHN DOE COMPANIES, who possibly include but are not limited to International Tax Associates, Integrated Business Analysis, Inc., International Tax Advisors, Inc. and International Capital Associates, LLC., as well as Defendants BACHMAN, KREIKS-TABONY, HEINING and COKER and others not yet identified to Plaintiffs.

(b)     From its inception, this scheme and conspiracy followed a basic pattern or patterns which included the following common elements:

(l) the Defendants and other co-conspirators/schemers identified small and mid-sized businesses which were in financial difficulty or otherwise appeared to be suitable "targets";

(2) from their offices in lllinois or otherwise, the Defendants and other co-conspirators/schemers would contact the business targets, such as PCEI, with a series of pitches about Defendants' immense knowledge, expertise and financial resources which supposedly were available to the targets;

(3) business targets, such as PCEI, also would be led to Defendants' websites, which also contained many representations about Defendants' immense knowledge, expertise and financial resources which supposedly were available to the targets;

(4) the Defendants and other co-conspirators/schemers would ingratiate themselves with the targets, such as Plaintiffs, travel from Illinois to the targets, business locations in many states, and make an intense, "sweatshop"-like pitch to do a quick survey or the like, for a small sum of money, such as the Three Hundred Dollars ($300.00) that they charged Plaintiffs;

(5) the Defendants and other co-conspirators/schemers then, through continued intense, "sweatshop" pressures, would persuade the targets, such as Plaintiffs, to pay a substantially greater sum of money, such as the amount of nearly Forty Thousand Dollars ($40,000.00) charged to Plaintiffs, supposedly in return for customized business analysis, evaluation and financing services, including useful copyrighted business forms wrongfully taken from Wilhelm Publishing Company;

(6) and so forth, sometimes to much greater sums per target, until either the target balked and refused to turn over more money or, as here, was

pressured into continuing the project by promises of nonexistent benefits to come;

(c)     In pursuance of the aforesaid overall scheme and conspiracy, the Defendants and other co-conspirators/schemers would, among other things:

(1)     persuade business "targets," such as Plaintiffs, to sign agreements of increasing detail;

(2)     attempt to limit the targets, wherever located in the United States, to purportedly legal clauses agreeing that the only judicial relief available was from an Illinois Circuit Court in Waukegan, Illinois, not far from Defendants' offices, upon information and belief knowing that most targets would be unable to afford far-away litigation, whether as plaintiffs or defendants; and

(3)     Defendants would "disappear," avoid the "targets," fail to communicate, fail to produce useful information or any financial support, take a belligerent stance, and otherwise "stonewall" the business "targets" after having pocketed for Defendants as personal profits whatever money they were able to extract from the targets.

(d)     Sufficient predicate details of this conspiracy/scheme are set out in the attached Exhibit A as directed by Defendants to Plaintiffs and other victims. (Exhibit A is incorporated herein and will be supplemented in accord with any appropriate standing order of the judge to whom this case is assigned).

37.     In engaging in such conduct, Defendants IPA, BURGESS, BACHMAN, KREIKS-TABONY, HEINING and COKER would and did agree among themselves, and with other yet unknown Defendant JOHN DOE COMPANIES, to devise and participate in

a scheme and plan of deceit, whereby they would and did abuse positions of trust and fiduciary responsibility of Defendants to Plaintiffs and others; they would and did abuse the discretion granted to Defendants and conspired to breach their obligations of undivided loyalty and fidelity and duty to act faithfully and in their clients' best interests and not for Defendants' self-interests; that Defendants used false and fraudulent pretenses calculated to deceive persons of ordinary prudence and due care; that Defendants made material, false or misleading statements of fact and information and also made material non-disclosures and concealments of fact and information, especially concerning their wrongful use of Wilhelm Publishing Company's business forms in perpetuating their scheme, all of which were important to their "targets" in deciding whether to act in the conduct of their affairs; all by Defendants so as to unlawfully, intentionally, willfully and with intent to defraud, knowingly and with specific intent to deceive in order to divert money from their "targets," which included Plaintiffs.

38.    At all relevant times, in connection with the aforesaid activities giving rise to this Complaint, Defendants conspired with each other and others yet unknown to engage in the activities set forth herein, and aided and abetted one another in such activities, all as prescribed and prohibited by 18 U.S.C. §§ 2, 371 and 1962.

39.    Plaintiffs are "persons" within the meaning of 18 U.S.C. §§ 1961 and 1964, and Defendants IPA and JOHN DOES are an "enterprise" within the meaning of 18 U.S.C. §§ 1961 and 1962.

40.    Defendants BURGESS, BACHMAN, KREIKS-TABONY, HEINING and COKER are "persons" within the meaning of 18 U.S.C. §§ 1961 and 1962, and at all relevant times were each employed by or associated with an "enterprise" within the meaning of 18 U.S.C. § 1961 and 1962, namely in:

(a) Multiple instances of mail fraud in violation of 18 U.S.C. § 1341 (Exhibit A-1);

(b) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343 (Exhibit A-2); and

(c) Multiple instances of transportation fraud in violation of 18 U.S.C. § 2314 (Exhibit A-3).

41.    Plaintiffs were directly and distinctly injured by Defendants in their business and property in an amount as yet to be determined, by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), but which amount far exceeds One Hundred Thousand Dollars ($100,000.00).

## COUNT III- CONSPIRACY

42.    Plaintiffs reasserts and realleges paragraphs 1 -41 of the Complaint hereof as paragraph 42 of this Count III as if fully set forth herein.

43.    By the aforesaid acts, and as a proximate result thereof, Defendants engaged in the conspiracies heretofore alleged, and as a consequence carried out those wrongful acts pursuant to their conspiracy.    Plaintiffs have been damaged in an amount as yet undetermined, but which amount exceeds One Hundred Thousand Dollars ($100,000.00).

## COUNT IV- FRAUD

44.    Plaintiffs reassert and reallege paragraphs 1 -26 of the Complaint hereof as paragraph 44 of this Count III as if fully set forth herein.

45.    Defendants' acts and omissions in connection with each of the aforesaid facts and with regard to Defendant's services to Plaintiffs were false or misleading descriptions or representations of fact, or false or misleading misrepresentations of fact,

deliberately made by the Defendants and each of them to induce Plaintiffs to agree to hire them as consultants at an exorbitant cost and to continue that employment for three weeks on the false promise of immediate and significant benefits to come but which were never given.

46.    Defendants knew or should have known at the time of their preliminary review of the books, records and general history of PCEI before the consultation began that PCEI's weak financial condition could not withstand an immediate drain of nearly $40,000.00 from its available cash and credit reserves to pay Defendants' consulting fees and expenses without serious consequences to PCEI and misled Plaintiffs into believing otherwise so that they would authorize them to start and thereafter continue the consultation. Indeed, Defendants knew full well that there was in fact no reasonable possibility at all that any significant amount of business would be generated by Defendants' ultimate proposals which included a list of so-called potential business contacts as Plaintiffs could not hope to obtain that business unless it bid jobs at only 10-15% of costs and not at the unrealistic 55% profit Defendants proposed.

47.    Defendants actions as aforesaid were intended by them to deceive and defraud Plaintiffs and did in fact do so to Plaintiffs' detriment.

48.    Defendants' actions were willful and wanton, made in bad faith for the sole intended purpose of defrauding Plaintiffs.

49.    Plaintiffs were actually deceived and defrauded of their property by the Defendants and that property was converted by the Defendants to their own use.

50.    Defendants have failed and refused to return all sums of money paid by Plaintiffs and failed and refused to properly compensate Plaintiffs for their injuries.

51.    Defendants aforesaid conduct is tantamount to criminal activity and is so egregious, intentional, willful and wanton, that punitive damages are warranted.

52.    The injuries suffered by Plaintiffs by reason of Defendants' fraudulent conduct have not yet been determined but exceeds the sum of One Hundred Thousand Dollars ($100,000.00).

WHEREFORE, the Plaintiffs, PHILLIP S. COGSWELL and PHIL COGSWELL ELECTRIC, INC. respectfully request that this Court enter judgment on their behalf and against the Defendants, jointly and severally, as to each of them as follows:

A.    Damages resulting from Defendants' aforesaid conduct and their violations of RICO,  the Federal Lanham Act, Illinois conspiracy law and Illinois fraud law, in an amount as yet to be determined at trial, but which is believed by Plaintiffs  to exceed One Hundred Thousand Dollars ($100,000.00);

B.    Punitive damages in the sum of Ten Million Dollars ($10,000,000.00);

C.    An amount equivalent to three times actual damages to be determined as provided by 15 U.S.C. 1117(a), 18 U.S.C. § 1964 and other applicable laws;

D.    Cancellation and termination of Defendants' domain names, Internet addresses and other registrations of "IPA" and Defendants' other names and marks, including as listed in Exhibit B-6, in accordance with 15 U.S.C. 1117(a) and 1125(a);

E.    Divestiture ordered of all of Defendants' property interests in money and obligations wrongfully obtained from Plaintiffs and others in accordance with 18 U.S.C. 1964{a);

F.    Costs, including litigation costs; pre and post-judgment interest; and attorney's fees - all in accordance with 15 U.S.C. 1117(a), 18 U.S.C. § 1964, and other applicable statutory provisions:

G.     An injunction barring and delimiting the future business activities of Defendants in accordance with 18 U.S.C. 1964(a);

H.     Dissolution or business reorganization of the Defendants' business entities, in accordance with 18 U.S.C.1964(a);

I.     Such other relief as the Court deems to be just and proper.

Phillip S. Cogswell and Phil Cogswell Electric, Inc.,   Plaintiffs


By:____s/Stephen G. Kehoe_____

One of Their Attorneys

Plaintiff's Attorneys:

Stephen G. Kehoe                              Edward D. Gilhooly
Law Offices of Stephen G. Kehoe       Edward D. Gilhooly & Associates
28 E. Jackson Blvd., Suite 423            28 E. Jackson Blvd., Suite 423
Chicago, IL 60606                             Chicago, IL. 60606
(312)362-1735                                  (312)362-1734

08CV1843      TG
JUDGE COAR
MAGISTRATE JUDGE MASON                    EXHIBIT A

## PARTICULARIZED RICO SCHEDULE

### A-1.  Mail

| Approximate Dates | Description | From | To |
|---|---|---|---|
| 4/13-15/01 | IPA contact conveyed by mail | Defendant IPA | PK Neuses |
| 5/20/02 | IPA contract conveyed by interstate mail, IL to NV | Defendant IPA (B. Fuller) | Appreciated Medical (Y.& P. Robinson) |
| 10/10/02 | IPA contract conveyed by interstate mail, IL to RI | Defendant IPA (D. Nankivell) | Tri-State Trucking |
| 10/20/02 | IPA contract conveyed by mail, IL to SC | Defendant IPA | Heritage Sportswear |
| 10/25/02 | IPA contract conveyed by mail, IL to NY | Defendant IPA | Eastern Business Systems |
| 1/7/03 | Letter, IL to NY | Defendant IPA | Eastern Business Systems |
| 7/30/03 | Letter, IL to KS | Defendant IPA | Advanced Design (R. Ballard) |
| 10/24/03 | IPA business assessment authorization conveyed by interstate mail, IL to AL | Defendant IPA Advisory | Plaintiffs |
| 11/15/03 | IPA indication of value report conveyed by interstate mail, IL to AL | Defendant IPA Advisory | Plaintiffs |
| 12/15/03 | IPA contract conveyed by mail | Defendant IPA | iTradia Corp. |
| 1/4/04 | IPA contract conveyed by mail, IL to FL | Defendant IPA (J.Bango, R.. Hough) | FMR Electrical (R. Maloney) |
| 1/8/04 | Letter, IL to FL | Defendant IPA (D. Walsh) | FMR Electrical |
| 1/23/04 | Letter, IL to FL | Defendant IPA (R. Hough) | FMR Electrical |
| 2/10/04 | Letter, IL to FL | Defendant IPA (R. Bell) | FMR Electrical |
| 2/17/04 | Contract conveyed by mail, IL to MO | Defendant IPA (D. Shikles) | American Alarms (K. & R. Wisdom) |
| 3/29/04 | Letter, IL to RI | Defendant IPA (R. Bell) | Tri-State Trucking |



A-2.  Wire

| Approximate Dates | Description | From | To |
|---|---|---|---|
| 2/10/00 | Interstate telephone call, IL to WVA | Defendant IPA/Burgess (N. Fertig) | Fertig Cabinet (Ken Sweet or Paul Tompkins) |
| 4/01/01 | Telephone call | Defendant IPA ( G. Steinberg or K. Owen) | JD Mueller |
| 1/31/02 | Interstate telephone call, IL to MI | Defendant IPA (James Sudbury or Dennis Cady) | Associated Construction (K. McFarland) |
| 4/25-26/02 | Interstate faxes and telephone calls, IL to MI | Defendant IPA (J. Sudbury or D. Cady) | Associated Construction (K. McFarland) |
| 10/03-10/04 | Defendants' websites, www.ipa-iba.com and others, transmitted by interstate wire continuously to all states, including AL | Defendants IPA and IPA Advisory | Plaintiffs |
| 10/20/03 | Interstate telephone call, IL to AL | Defendant Jane Roe 1 | Plaintiff J. Brady |
| 10/21/03 | Interstate telephone call, AL (at Plaintiffs' business) to IL | Defendant IPA and IPA Advisory | IPA Advisory (K. Owen?) (her "boss") |
| 10/31/03 | Interstate telephone call, IL to AL | Defendant IPA Advisory (the "boss") | Plaintiff J. Brady |
| 10/23/03 | IPA survey fee invoice by interstate fax, IL to AL | Defendant IPA | Plaintiffs |
| 10/24/03 | IPA credit card payment authorization by interstate fax, IL to AL | Defendant IPA Advisory | Defendant IPA |
| 10/24/03 | IPA credit payment authorization, signed by plaintiffs, by interstate fax, IL to AL | Defendant IPA Advisory | Defendant IPA |
| 11/5/03 | IPA Authorization to represent Alpha, by interstate wire, IL to AL | Defendant IPA/Defendant Essiam | Plaintiffs |
| 1/6-30/04 | Wire processing of $63,032 in checks, FL to IL | Defendant IPA | FMR Electric |
| 10/26/04 et al | Broadcast advertising including on CBS radio network | Defendants | Entire USA |

A-3.   Transportation

| Approximate Dates | Description |
|---|---|
| 2/17-6/22/00 | Interstate transportation by Defendant IPA (P. Tompkins/K. Sweet) of selves between IL and WVA; and from WVA to IL of Fertig Cabinet checks, total $190,307.00; and processing checks |
| 4/24-27/02 | Interstate transportation, IL to MI and MI to AL, of Defendant IPA (James Sudbury or Dennis Cady) to and from Associated Construction Services |
| 4/30-6/20/02 | Interstate transportation by Defendant IPA (J. Sudbury/D. Cady) of checks from Associated Construction Services for $86,314.76 |
| 5/21-31/02 | Interstate transportation by Defendant IPA (B. Fuller/B. Bryant/K. Morrow), IL to NV and NV to IL, of selves to and from Appreciated Medical; and of checks in excess of $56,000 from NV to IL; and processing of checks |
| 10/15-11/15/02 | Interstate transportation by Defendant IPA (D. Nankivell, A. Pohoretsky, J. Weissberg), IL to RI, of selves to and from Tri-State Trucking; and of checks in excess of $96,000 from RI to IL; and processing of checks |
| 11/3-15/02 | Interstate transportation by Defendant IPA (D. Walsh, C. Blume, S. Groo), IL to SC, of selves to and from Heritage; and of checks from SC to IL more than $50,000; and processing of checks |
| 11/15-12/14/02 | Interstate transportation by Defendant IPA (A.Warren, B. Ernest, T.Ross), IL to NY, of selves to and from Eastern Business Systems; and of checks from NY to IL of more than $53,000; and processing of checks |
| 1/28-2/21/03 | Interstate transportation by Defendant IPA (R. Bratt, R. Rockwell), IL to KS, of selves to and from Advance Design; and of checks from KS to IL of more than $19,000; and check processing |
| 10/20-25/03 | Interstate transportation, IL to AL and AL to IL, of Defendants Mac Rae, Jane Roe 1 (K. Owen?) and Essiam, of Defendants IPA and IPA Advisory, in connection with meetings at Plaintiff's business in AL |
| 10/23/03 | Interstate transportation, AL to IL, of Plaintiff's $750.00 check by Defendant Mac Rae; and check processing |
| 10/25/03 | Interstate transportation, AL to IL, of Plaintiff's $22,500.00 credit card authorization; and credit card processing |
| 1/04 | Processing of $18,500.00 checks by wire, of iTradia Corp, by Defendant IPA Advisory |
| 2/17-3/30/03 | Interstate transportation, IL to MO and MO to IL, of Defendant IPA (J. Williams/S. Bantit) to and from American Alarms; transportation of checks exceeding $33,000 from MO to IL; and processing of checks |

A-4.    Other Civil Litigation Known to Plaintiffs involving
Defendants' Schemes as Set Forth in Complaint

--Associated Construction Services v. International Profit, 04L241 (Lake Co, IL)
--iTradia Corp v. IPA Advisory, 04AR1758 (Lake Co, IL)
--Fertig Cabinet Co v. Int'l Profit, 01L432 (Lake Co, IL)
--PK Neuses Inc v Int'l Profit, 03L773 (Lake Co, IL)
--JD Mueller Inc v Int'l Profit, 02L942 (Lake Co, IL)
--Int'l Profit v. Appreciated Medical Professionals, 04AR990 (Lake Co, IL)
--Int'l Profit v. FMR Electrical Contractors, 04AR920 (Lake Co, IL)
--IPA v. Tri-State Trucking, 04L362 (Lake Co, IL)
--IPA v. American Alarms, 04AR1226 (Lake Co, IL)
--IPA v. Heritage Sportswear, 03L292 (Lake Co, IL)
--IPA v. Storeflex Fixtures, 03L688 (Lake Co, IL)
--IPA v. Advanced Design & Build, 04L355 (Lake Co, IL)
--IPA v. Southern Wire, 02L717 (Lake Co, IL)
--IPA v. Eastern Business Systems, 03L1015 (Lake Co, IL)


A-5.    Criminal Proceedings Known to Plaintiffs Involving Defendants and Related Parties

--John Burgess, Defendant, and co-founder and chairman of Defendant IPA—attempted
grand larceny, New York; twenty complaints; disbarment as New York attorney
--Bruce Tulio, cofounder of Defendant IPA—conspiracy, US District Court,
Philadelphia PA
--Charles (Bill) Morton, cofounder of Defendant IPA—misdemeanor theft, Allegheny
County, PA

A-6.  Defendants' Names and Mark Known to Plaintiffs, and Used in Commerce as part of
Defendants' Schemes set forth in Complaint

a.  IPA: U.S. Patent and Trademark Office, US Application Serial Nos. 78/284,469
(IPA); 78/284,439 (IPA); 76/596,926 (IPA and Design);76/596,927 (IPA
Device);76/596,948 (IPA IBA and Design);78/465,192 (IPA SBRB); 78/462460
(IPA Small Business Research Board); and 76/596,933 (IPA Benchmarks). IL State
Trademark Registration No. 75,688 (IPA). Other state and federal records not
determined. Common law, unregistered uses.
b.  International Profit Associates: U.S. Patent and Trademark Office, US Application
Serial Nos. 78/401,257 (INTERNATIONAL PROFIT ASSOCIATES); 78/465,183
(International Profit Associates  SMALL BUSINESS RESEARCH BOARD). Illinois
business registration of name, International Profit Associates, Inc. Other state and
federal records not determined. Common law, unregistered uses.
c.  International Advisory & Intermediary Services: Illinois business registration of
name. Other state and federal records not determined. Common law, unregistered
uses.

A-7.   Information Sources for Exhibit A

    a.  Plaintiffs—A-1, 2 and 3
    b.  Court records—A-1 through A-6
    c.  Internet websites of Defendants—A-2 and A-6
    d.  Inc. Magazine,  www.inc.com and public records--A-5 and A-6

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

AO 398    (Rev. 05/00)

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

FILED: MARCH 31, 2008
08CV1843        TG
JUDGE COAR
MAGISTRATE JUDGE MASON

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:  (A)    International Profit Associates, Inc.

as    (B)                          of (C)

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Northern District of Illinois and has been assigned docket number (D)

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within (E)    60    days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this    1st    day of
April          ,    2008    .
(Month)                (Year)

Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—Docket number of action
E—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

AO 398    (Rev. 05/00)

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:  (A)   John R. Burgess

as    (B)                                    of (C)

     A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Northern District of Illinois and has been assigned docket number (D)

     This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within (E)   60   days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

     If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

     If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

     I affirm that this request is being sent to you on behalf of the plaintiff, this       1st       day of
April            ,      2008     .
(Month)                (Year)

Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—Docket number of action
E—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

AO 398　　(Rev. 05/00)

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO: (A)　Al Bachman

as　(B)　　　　　　　　　　　　of (C)

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Northern District of Illinois and has been assigned docket number (D)　　　　　　　　　　.

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within (E)　60　days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this　　1st　　day of April　　,　　2008　　.
(Month)　　　　　　　(Year)

　　　　　　　　　　　　　　　　　Signature of Plaintiff's Attorney
　　　　　　　　　　　　　　　　　or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—Docket number of action
E—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

AO 398    (Rev. 05/00)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### NOTICE OF LAWSUIT AND REQUEST FOR
### WAIVER OF SERVICE OF SUMMONS

TO: (A)    David Kreihs Tabony

as    (B)                              of (C)

     A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Northern District of Illinois and has been assigned docket number (D)                    .

     This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within (E)    60    days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

     If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

     If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

     I affirm that this request is being sent to you on behalf of the plaintiff, this    1st    day of
April            ,        2008        .
(Month)                (Year)

_____
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—Docket number of action
E—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

AO 398   (Rev. 05/00)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### NOTICE OF LAWSUIT AND REQUEST FOR
### WAIVER OF SERVICE OF SUMMONS

TO:   (A)   Will Heining

as   (B)                           of (C)

     A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Northern District of Illinois and has been assigned docket number (D)

     This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within (E)   60   days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

     If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

     If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

     I affirm that this request is being sent to you on behalf of the plaintiff, this   1st   day of
April   ,   2008   .
(Month)        (Year)

_Signature_
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—Docket number of action
E—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

AO 398    (Rev. 05/00)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### NOTICE OF LAWSUIT AND REQUEST FOR
### WAIVER OF SERVICE OF SUMMONS

TO:  (A)    Ronald Coker

as    (B)                                of (C)

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Northern District of Illinois and has been assigned docket number (D)                    .

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within (E)    60    days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this    1st    day of
April          ,    2008    .
(Month)                (Year)

_____
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—Docket number of action
E—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

## VERIFICATION

PHILLIP COGSWELL, being first duly sworn under oath, deposes and states that he has read the above and foregoing Verified Complaint and that the allegations contained therein are true to the best of his knowledge, information and belief.

Phillip Cogswell

Subscribed and sworn to before me this 2(t day of March, 2008

Notary Public

SALLY KOHLER
Notary Public
State of Kansas
My Commission Expires 2/6/2012